UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH & MCLENNAN AGENCY LLC,<br><br>Plaintiff,<br><br>-against-<br><br>ROBERT W. STEDMAN,<br><br>Defendant. | Case No.: 24-cv-01671<br><br>**COMPLAINT** |

Plaintiff Marsh & McLennan Agency LLC ("MMA" or "Plaintiff") as for its Complaint against Robert W. Stedman ("Stedman" or "Defendant"), alleges:

**INTRODUCTION**

1. Stedman breached, and is continuing to breach, the contractual obligations he owes to MMA as a former employee subject to restrictive covenant agreements.

2. MMA and its predecessor employed Stedman for more than 15 years as a Producer.

3. MMA gave Stedman access to its confidential information and it tasked him with developing and maintaining important client relationships for MMA.

4. Stedman is now using the confidential information he learned about MMA clients and MMA employees to solicit them to work with him at his new employer, non-party Northeast Series of Lockton, LLC ("Lockton"), in violation of his contractual obligations.

5. He has already solicited at least two MMA clients, at least one of MMA's prospective clients, and at least one MMA employee with whom he worked while at MMA.

6. One client he solicited, a private equity firm with approximately nine portfolio companies, all of whom did business with MMA, informed MMA that it is moving its business, and the business of its portfolio companies, from MMA to Lockton, Stedman's new employer.

7. One of the MMA employees Stedman solicited resigned employment with MMA, following the solicitation, to take a position with Lockton, Stedman's new employer.

8. MMA thus sues to enforce Stedman's contractual promises, to protect its client, prospective client, and employee relationships; its confidential information; and its goodwill; to prevent further irreparable injury to MMA's business interests, and to seek damages for the injuries Stedman has already inflicted on MMA's relationships.

## PARTIES

9. MMA is a Delaware limited liability company with its principal place of business located at 360 Hamilton Avenue, Suite 930, White Plains, NY 10601. It is a leader in insurance and employee benefits brokerage and managements services.

10. MMA's sole member is Marsh USA, Inc., a Delaware corporation with its principal place of business located at 1166 Avenue of the Americas, New York, New York 10036.

11. Both MMA and Marsh are subsidiaries of Marsh & McLennan Companies, Inc., ("MMC"), a Delaware corporation with its principal place of business located at 1166 Avenue of the Americas, New York, New York 10036.

12. Defendant Stedman is a natural person and a citizen of Pennsylvania, who, upon information and belief, resides at 3 Mill Road, Malvern, PA 19355. He is a former employee of MMA, and a current employee of Lockton.

## JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332 because this is an action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because under the Governing Law and Choice of Forum clause in Stedman's 2022 Restrictive Covenants Agreement with MMC

and its affiliates and subsidiaries, including MMA, this Court is the only federal venue for any action for breach of that agreement or relating to his employment. Stedman and MMC unambiguously selected the state and federal courts in the County of New York, including the U.S. District Court for the Southern District of New York, as the exclusive forum for any action or proceeding relating to his 2022 Restrictive Covenant Agreement and his employment with MMA.

## FACTUAL ALLEGATIONS

15.     MMA is a world leader in the health and benefits marketplace. It provides clients with a comprehensive array of health and benefits solutions, including managing employee benefit plans, assisting clients with choosing the right employee benefits plans to fit their needs, providing access to market experts, and advising on regulatory compliance.

### Stedman's Employment with an MMA Predecessor

16.     In 2007, Stedman began employment as a Producer for Trion Group, Inc., an employee benefits company based in Pennsylvania that provided consulting, brokerage, benefit administration, and other services to clients throughout the United States.

17.     In connection with his employment with Trion, Stedman signed an employment agreement containing restrictive covenants. A copy of the Employment Agreement between Stedman and Trion (the "Trion Employment Agreement") is attached as **Exhibit A**.

18.     By signing the Trion Employment Agreement, Stedman agreed that for two years following his separation from employment he would not, directly or indirectly, initiate any contact or communication "for the purpose of causing or attempting to cause any Customer of [Trion] not to do business with the [Trion] or to transfer all or part of such customer's business from [Trion]" or for purposes of "interfer[ing] with any business relationship between [Trion] and any of its customers." *See* Exhibit A, ¶ 4.

19. Stedman also agreed that for two years following his separation from employment he would not, directly or indirectly, initiate any contact or communication "for the purpose of inducing or attempting to induce any then existing employees of [Trion] to terminate such relationship." *See* Exhibit A, ¶ 4.

20. In exchange for being granted access to Trion's Confidential Information and in consideration of his employment, Stedman agreed in the Trion Employment Agreement that he would, for so long as the information remained confidential and non-public, "keep secret all documents, materials, knowledge or other confidential information," including "customer insurance needs and pricing" which were "obtained by him during the course of or in connection with his employment and association with [Trion] and its affiliates." *See* Exhibit A, ¶ 5.

21. Stedman acknowledged that these restrictions in the Trion Employment Agreement are reasonable and necessary to protect Trion's legitimate interests. *See* Exhibit A, ¶ 17.

22. Stedman also acknowledged and agreed in the Trion Employment Agreement that if he breached the post-employment restricted periods for the nonsolicitation obligations they would be extend by any time required for ligation to enforce those provisions, with the extension period beginning on the date of Stedman's first breach and ending on the termination of the ligation and expiration of all appeals related to such litigation. *See* Exhibit A, ¶ 17.

23. The Trion Employment Agreement, which is governed by Pennsylvania law, also clarified that it bound any successor of Trion by merger or consolidation. *See* Exhibit A, ¶¶ 11, 15.

### MMA's Acquisition of Trion

24. In 2010, MMA acquired Trion and Stedman became an employee of MMA.

25. Although his employer changed, Stedman's position, job responsibilities, and post-employment obligations remained unchanged.

26. Stedman continued in his role as a Producer responsible for developing and maintain client relationships.

27. Stedman relied on financial and internal resources from MMA to generate business, service clients, and manage client relationships. He developed client relationships because of his employment, and supported by an experienced team of MMA employees, on whom he relied on to carry out his job duties.

28. MMA also supported Stedman's client-facing role by financing client-related expenses, sponsoring client events, and investing in marketing collateral and sales tools, all of which Stedman used to form and strengthen client relationships.

### Stedman's Exposure to MMA's Confidential Information

29. In his position for MMA, Stedman became intimately familiar with MMA's confidential information, including, without limitation:

- Client lists and client contact information, including phone numbers and email addresses, and documents compiling information about MMA's clients;
- Prospective client lists and target businesses;
- Current and historical client account information, including client needs and preferences, insurance, and purchasing and buying preferences, premium amounts, terms of insurance policies, loss ratios, and experiences, exposure data, surety needs, and arrangements, and compilations of them;
- Financial information, such as client pricing information and revenue received per client, and compilations of them;
- Insurance program, project, and carrier information;
- MMA's business development plans, products, strategies, revenue projections, financial planning, and accounts receivable information;
- The terms of MMA's agreements and financial arrangements with its clients;
- MMA's internal operating, management, selling, marketing, and administrative materials;
- MMA's methods, processes, proprietary databases, and benchmarking analyses; and
- MMA's sales, marketing, and business strategies.

30. MMA protects its confidential information by requiring that such information be stored and remain on MMA's password-protected network and devices, including the phones and laptops MMA provided Stedman and the databases to which it gave him access.

31. MMA also protects its confidential information, and its client relationships and goodwill, by requiring employees with access to confidential information to sign restrictive covenant agreements.

**Stedman's Restrictive Covenant Agreements**

32. During his employment with MMA, Stedman signed several restrictive covenant agreements, which provided him with various economic benefits in exchange for certain post-employment obligations.

33. For example, in March 2022, in exchange for his receipt of long term incentive awards of restricted stock units (which he received), Stedman electronically signed and agreed to be bound by a Restrictive Covenants Agreement with MMC and its affiliates and subsidiaries (including his employer, MMA). Attached as **Exhibit B** is a copy of this agreement, together with Stedman's electronically signed 2022 Grant Agreement (the "MMC Restrictive Covenants Agreement").

34. In exchange for Stedman agreeing to be bound by the MMC Restrictive Covenants Agreement, he in turn received a March 2022 award of Restricted Stock Units. Stedman agreed to similar restrictive covenant agreements as a condition of his receiving Restricted Stock Unit awards in 2017, 2018, and 2019.

35. In the MMC Restrictive Covenants Agreement, which is governed by New York law, Stedman acknowledged that solely by reason of his employment with MMA, he had and would "come into contact with and develop and maintain relationships with a significant number of the Company's clients and prospective clients." *See* Exhibit B, ¶¶ 2, 12.

36. Thus, like the Trion Employment Agreement, the MMC Restrictive Covenants Agreement prevents Stedman for twelve-months following the end of his employment from soliciting certain MMA clients and prospective clients to sell or provide products or services of the type he sold or provided while employed by the MMA. *See* Exhibit B, ¶ 2(b).

37. This client and prospect non-solicitation restriction is narrowly tailored to cover only those MMA clients and prospective clients with whom Stedman had contact or Confidential Information about during the final two years of his employment with MMA.

38. Later in the MMC Restrictive Covenants Agreement, Stedman acknowledged and agreed that solely as a result of his employment with MMA, and given his broad responsibilities, which include working with other MMA employees, he would come into contact with and acquire Confidential Information about MMA employees. *See* Exhibit B, ¶ 3.

39. Stedman therefore agreed to refrain, for twelve months following his separation from employment with MMA, from soliciting or trying to cause any MMA employee to leave their MMA employment. *See* Exhibit B, ¶ 3.

40. This employee nonsolicitation restriction is narrowly tailored to cover only those MMA employees with whom Stedman had contact during his last two years of employment or about whom Stedman obtained Confidential Information about during the final two years of his employment with MMA. *See* Exhibit B, ¶ 3.

41. Also, Stedman agreed in the MMC Restrictive Covenants Agreement to not use for his own or another's purpose or disclose to any other person or entity MMA's Confidential Information. *See* Exhibit B, ¶ 4.

42. Under the MMC Restrictive Covenants Agreement, Confidential Information includes the identity of the MMA's clients, the amounts paid to MMA by its clients, client needs and requirements, client risk characteristics, policy terms and conditions, leads and referrals to

prospective clients, and personnel information about other MMA employees, including their compensation, skills, qualification, and abilities. *See* Exhibit B, ¶ 4.

43. Stedman acknowledged and agreed that the client and employee nonsolicitation restrictions and the confidentiality provisions in the MMC Restrictive Covenants Agreement are reasonable and necessary to protect MMA's legitimate business interests, are reasonable in view of the consideration he received for signing the MMC Restrictive Covenants Agreement, and would not prevent him from obtaining employment within his field of expertise. *See* Exhibit B, ¶ 6.

44. Stedman also acknowledged that his breach of the nonsolicitation or confidentiality obligations in the MMC Restrictive Covenants Agreement would cause irreparable injury to MMA for which monetary damages would not be readily calculable and an adequate remedy at law would not be available. He, therefore, agreed that in the event of his breach of the nonsolicitation or confidentiality obligations, MMA would be entitled to, among other damages, injunctive relief to prevent his further breach, and fees and costs MMA incurred in seeking enforcement of Stedman's contractual promises, including attorneys' fees, expert witness fees, and litigation costs.

**The Post-Employment Covenants Are Reasonable**

45. The Trion Employment Agreement and MMC Restrictive Covenants Agreement each impose a continuing contractual relationship on Stedman after his termination from employment with MMA.

46. The agreements are each narrowly tailored to protect MMA's legitimate business interests.

47. MMA has a reputation for expertise in the insurance industry and has developed through great expense significant goodwill embodied in its relationships with its clients and the insurance companies whose products are sought by MMA's clients.

48. The prohibitions on directly or indirectly soliciting, servicing or otherwise interfering with certain clients and prospective clients protects MMA's legitimate interest in its client relationships—in which it significantly invested.

49. MMA also has a legitimate interest in maintaining its relationships with its employees in whom MMA invest significant capital to train and retain the employees.

50. The prohibitions on directly or indirectly soliciting certain MMA employees to induce them to resign their employment with MMA protects MMA's legitimate interest in its employment relationships—in which it significantly invested.

51. MMA also has an interest in prohibiting its employees, to whom it entrusted Confidential Information, from the disclosure and use of its confidential information to lure customers and employees away from MMA.

52. Because the insurance marketplace is a competitive industry, much of the information about MMA's business plans, products, services, employees, and clients is considered by MMA to be Confidential Information. MMA has developed and marketed an extremely operation that is highly dependent upon maintaining the secrecy of this information.

53. Disclosing this confidential information would put MMA at a competitive disadvantage, as this information is only valuable if MMA can maintain its secrecy.

**Stedman's Resignation and Improper Solicitation of MMA's Clients and Employees**

54. On Friday, July 15, 2022, Stedman resigned his employment with MMA.

55. Stedman began employment with Lockton the following Monday, July 18, 2022.

56. In its public statement touting Stedman's hiring, Lockton emphasized Stedman's experience at MMA and stated that Stedman would leverage that experience to generate client partnerships for Lockton:

> Stedman will lead a team of employee benefits specialists who serve

> clients nationally and globally in the Center City and Blue Bell offices. **In addition, Stedman will also leverage his background and experience to generate client partnerships and further Lockton's growth** in the greater Philadelphia market . . . **Before joining Lockton, he spent 15 years with Trion/MMA**, most recently serving as their National Private Equity Practice Leader

See https://global.lockton.com/us/en/news-insights/lockton-grows-its-philadelphia-region-with-addition-of-employee-benefits (last visited Mar. 5, 2024) (emphasis added).

57. Following his resignation, Stedman solicited at least one MMA employee with whom he worked while employed by MMA to join him at Lockton.

58. That employee, an underwriter who had worked for Trion and MMA for nearly seven years and had worked closely with Stedman, resigned his employment in or around April 2023, and accepted a position with Lockton, working for Stedman.

59. On March 29, 2023, an assistant general counsel for MMA wrote to Stedman to remind him of his post-employment obligations and to demand that he cease any further direct or indirect solicitations.

60. Six days later, Stedman responded by email, stating: "I have not and will not violate my non-solicitation and non-servicing obligations to MMA."

61. This statement was untrue. As of that date, Stedman had already solicited an MMA employee in violation of his nonsolicitation obligations.

62. Stedman's improper solicitations were not limited to employees. He also solicited at least two MMA clients and one prospective client to whom he had made a pitch during his MMA employment.

63. One client Stedman solicited is a private equity fund with approximately nine portfolio companies, all of whom worked with MMA. It had been a client of MMA, and its predecessor since 2010.

64. During his MMA employment, Stedman was one of two principal MMA contacts/producers for the private equity fund client. In other words, he was responsible for maintaining MMA's relationship with the client.

65. In that capacity, Stedman learned Confidential Information about the client, including the amounts the client paid MMA, the client's needs and requirements, the client's risk characteristics, and the expiration dates and terms of the client's insurance policies—all information Stedman could and did use to unfairly compete with MMA for the client's business.

66. At MMA, Stedman was also responsible for participating in an annual "HR Summit" for the client, hosted by MMA.

67. At the HR Summit, MMA employees, including Stedman presented to the human resources representatives and executives of the client and each of its portfolio companies.

68. On June 20, 2023, the private equity fund client gave notice to MMA that it was terminating its relationship with MMA and moving its business to Lockton, where Stedman then worked.

69. The private equity fund client first sought to move its business to Lockton just ten days after notifying MMA, but given the extensive nature of the work MMA performs for the client that was not possible. The client is now scheduled to transition all of its business to Lockton effective February 1, 2024.

70. In September 2023, the client hosted the HR Summit itself and asked both MMA, as the client's incumbent broker, and Lockton, the incoming broker, to present. MMA presented in the morning, and Lockton presented in the afternoon.

71. Despite his contractual restrictions, Stedman attended the HR Summit on behalf of his new employer Lockton.

72. Following his resignation from MMA, Stedman solicited another client with whom he had worked during his employment with MMA.

73. This time, the client remained with MMA. The Chief Executive Officer of the client told an MMA employee about Stedman's' solicitation of his business.

74. During his MMA employment, Stedman learned confidential information about the client. Upon information and belief, he used that Confidential Information to unfairly compete with MMA for the client's business.

75. Stedman also solicited at least one prospective client to whom he pitched MMA's services along with other MMA employees while employed by MMA.

76. Stedman took employees from the prospective client golfing, during which he solicited that company's business on behalf of Lockton.

77. Stedman knows the services and pricing MMA pitched to the prospective client. Upon information and belief, he used that Confidential Information to unfairly compete with MMA for the prospective client's business.

## FIRST CLAIM FOR RELIEF
### Breach of Trion Employment Agreement – Nonsolicitation of Customers

78. MMA repeats and realleges every allegation in Paragraphs 1 through 77 as if set forth herein.

79. The customer nonsolicitation provisions of the Trion Employment Agreement are valid and enforceable.

80. MMA is a successor to Trion under the Trion Employment Agreement and it fully performed its obligations under the Trion Employment Agreement.

81. Under the Trion Employment Agreement, Stedman is prohibited, for two years following his separation of employment with MMA, from directly or indirectly, initiating any

contact or communication "for the purpose of causing or attempting to cause any Customer of [MMA] not to do business with the Company or to transfer all or part of such customer's business from the Company" or for purposes of "interfer[ing] with any business relationship between [MMA] and any of its customers." *See* Exhibit A, ¶ 4.

82. Stedman breached the Trion Employment Agreement by soliciting at least two MMA clients with the intention of causing that client to transfer its business from MMA to Lockton.

83. As direct and proximate result of Stedman's breach, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other damages, including lost revenue, attorneys' fees, and litigation costs in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Breach of Trion Employment Agreement – Nonsolicitation of Employees**

84. MMA repeats and realleges every allegation in Paragraphs 1 through 83 as if set forth herein.

85. The employee nonsolicitation provisions of the Trion Employment Agreement are valid and enforceable.

86. MMA is a successor to Trion under the Trion Employment Agreement and it fully performed its obligations under the Trion Employment Agreement.

87. Under the Trion Employment Agreement, Stedman is prohibited, for two years following his separation of employment with MMA, from directly or indirectly, initiating any contact or communication with certain MMA employees for the purpose of inducing or attempting to induce those to terminate their employment relationship with MMA. *See* Exhibit A, ¶ 4.f.

88. Stedman breached the Trion Employment Agreement by soliciting at least one MMA employee with the intention of causing that employee to resign his MMA employment and join him at Lockton.

89. As direct and proximate result of Stedman's breach, MMA has suffered and will continue to suffer damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**Breach of Trion Employment Agreement – Confidentiality**

90. MMA repeats and realleges every allegation in Paragraphs 1 through 89 as if set forth herein.

91. The confidentiality provisions of the Trion Employment Agreement are valid and enforceable.

92. Under the Trion Employment Agreement, Stedman agreed, for so long as the information remained confidential and non-public, to "keep secret all documents, materials, knowledge or other confidential information," including "customer insurance needs and pricing" which were "obtained by him during the course of or in connection with his employment and association with [Trion] and its affiliates." *See* Exhibit A, ¶ 5.

93. Stedman breached the Trion Employment Agreement when he used Confidential Information to solicit at least two MMA clients and at least one MMA prospective client.

94. As direct and proximate result of Stedman's breach, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other damages, in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
**Breach of MMC Restrictive Covenants Agreement – Nonsolicitation of Clients**

95. MMA repeats and realleges every allegation in Paragraphs 1 through 94 as if set forth herein.

96. The client nonsolicitation provisions of the MMC Restrictive Covenants Agreement are valid and enforceable.

97. MMA fully performed its obligations under the MMC Restrictive Covenants Agreement, including awarding Stedman restricted stock units.

98. Under the MMC Restrictive Covenants Agreement, Stedman is prohibited, for twelve months following his separation of employment with MMA, from directly or indirectly, (i) soliciting MMA clients with whom he had contact or about whom he obtained Confidential Information during the last two years of his employment to sell or provide products or services of the type Stedman sold during his employment with MMA; (ii) inducing MMA clients and prospective clients to terminate, cancel, not renew, or not place business with MMA; and (iii) performing or supervising the performance of services or provision of products of the type Stedman sold while employed by MMA. *See* Exhibit B, ¶ 2(b).

99. Stedman breached the MMC Restrictive Covenants Agreement by soliciting at least two MMA clients with the intention of selling to the MMA client the type products and services he sold while employed my MMA.

100. Stedman further breached the MMC Restrictive Covenants Agreement by soliciting at least one prospective MMA clients with the intention of causing it to do business with Lockton, and not with MMA.

101. As direct and proximate result of Stedman's breach, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other damages, including lost revenue, attorneys' fees, and litigation costs, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
**Breach of MMC Restrictive Covenants Agreement – Nonsolicitation of Employees**

102.   MMA repeats and realleges every allegation in Paragraphs 1 through 101 as if set forth herein.

103.   The employee nonsolicitation provisions of the MMC Restrictive Covenants Agreement are valid and enforceable.

104.   MMA fully performed its obligations under the MMC Restrictive Covenants Agreement, including awarding Stedman restricted stock units.

105.   Under the MMC Restrictive Covenants Agreement, Stedman is prohibited, for twelve months following his separation of employment with MMA, from directly or indirectly, soliciting or endeavoring to cause any MMA employee with whom he worked during his last two years of employment or about whom he obtained Confidential Information to leave employment with MMA. *See* Exhibit B, ¶ 3.

106.   Stedman breached the MMC Restrictive Covenants Agreement by soliciting at least one MMA employee with whom he worked during his final two years of his MMA employment to join him at Lockton.

107.   As direct and proximate result of Stedman's breach, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other damages, including lost revenue, attorneys' fees, and litigation costs, in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
**Breach of MMC Restrictive Covenants Agreement – Confidentiality**

108.   MMA repeats and realleges every allegation in Paragraphs 1 through 107 as if set forth herein.

109.   The confidentiality provisions of the MMC Restrictive Covenants Agreement are valid and enforceable.

16

110. MMA fully performed its obligations under the MMC Restrictive Covenants Agreement, including awarding Stedman restricted stock units.

111. Under the MMC Restrictive Covenants Agreement, Stedman agreed that he would not use for his own or another's purpose or disclose to any other person or entity MMA's Confidential Information. *See* Exhibit B, ¶ 4.

112. Stedman breached the MMC Restrictive Covenants Agreement when he used Confidential Information to solicit at least two MMA clients and one prospective client.

113. Stedman breached the MMC Restrictive Covenants Agreement when he used Confidential Information to solicit at least one MMA employee.

114. As direct and proximate result of Stedman's breach, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other damages, including lost revenue, attorneys' fees, and litigation costs, in an amount to be proven at trial.

**WHEREFORE**, based on the foregoing MMA requests the following relief:

A. A judgment in favor of MMA as to all claims.

B. Monetary damages for Stedman's breach of contract, including but not limited to actual, consequential, and incidental damages.

C. Injunctive relief as follows:

   1. Enjoining Stedman, and any person or entity acting in concert with him or under his supervision, from violating the non-solicitation covenants in the Trion Employment Agreement;

   2. Enjoining Stedman, and any person or entity acting in concert with him or under his supervision, from violating the non-solicitation covenants MMC Restrictive Covenants Agreement;

3. Enjoying Stedman from using or disclosing any of MMA's Confidential Information as defined in the Trion Employment Agreement and the MMC Restrictive Covenants Agreement; and

4. Ordering Stedman to promptly return to MMA or destroy any and all MMA Confidential Information, as defined in the Trion Employment Agreement and the MMC Restrictive Covenants Agreement.

D. And award of attorneys' fees and costs in the maximum among permitted or provided for by law and contract.

E. Such other and further relief as the Court deems just and proper.

Dated: March 5, 2024

LITTLER MENDELSON P.C.

By: */s/ Shawn Matthew Clark*
    A. Michael Weber
    Shawn Matthew Clark
    Miguel A. Lopez
    900 Third Avenue
    New York, NY 10022.3298
    Telephone: (212) 583-9600
    MWeber@littler.com
    SMClark@littler.com
    MALopez@littler.com

*Attorneys for Plaintiff*
*Marsh & McLennan Agency LLC*
